Okay, our next case for argument is 21-1168. In Re Kirilichin. Am I saying that right? Please tell me how to say it. Kirilichin. Kirilichin. Thank you. In Re Kirilichin. Mr. Winter, please proceed. Okay. Thank you. And thank you for the opportunity to almost be there in person. So, this involves a metal ceiling. It's capable of withstanding pretty extreme pressures. It's used in manufacturing internal pathways in hydraulic manifolds. One of the claims involves the ability to withstand 40,000 psi, which for reference, a normal air compressor that you use for tools goes up to about 120 psi. And if one of those tanks ruptured, it would be like a bomb going off. So, this is 40,000 psi. So, these are pretty high pressure situations in applications. I think what's unique about this case compared to others that you probably often see from patent offices is that when you have people arguing that the patent office didn't consider the reference as a whole, I think you normally have to infer that from what happened. We actually have a discrete statement that the examiner says, to be clear, the only teaching the examiner has gleaned from the disclosure of the lead is that it's known to be advocated to press firmly in front of two components of a ceiling insert. And so, that raises two issues. Number one, says that's the only thing I've considered. And if you... This is Judge Krause. Let me just clarify to see if we're on the same wavelength of the point. We disclosed the tapering to aid in pre-assembling the plug and sleeve. Is that correct? Correct. So... And you're claiming the plug is also tapered, right? No. So, we have a cylindrical metallic sleeve. And so, it's the core. The core itself is tapered. And so, that core has to be tapered to make a forcible extension. However, the cylindrical plug sleeve. So, if you look at the lead plug, the outside wall is tapered and it goes in a tapered hole. And so, the tapers are to match. And then, you press the internal pin in lead to force that already tapered insert, that already tapered outer wall against the tapered hole. And so, what Lee talks about is, in column one, starting at... This is appendix 611. Column one of the Lee reference, both said prior plugs function by control expansion of a cylindrical plug membrane. So, that's referring to... Earlier in column one, he cites two patent numbers. And those involve cylindrical plugs with a cylindrical outer wall. And so, the Lee reference goes on to discuss these cylindrical plugs with a basically straight up and down outer wall. It goes on for much of column one through column two to discuss some of the challenges with those inserts. And on column two, line 20, it says pre-assembly of the pre-assembly. It's not been found to be practical, in part because of the large diameter and radial distortion. So, effectively, Lee is saying, look, we have all of these problems with the cylindrical plugs and they don't work for pre-assertion, pre-assembly. And so, the solution we have is to put a tapered outer wall... Counsel, this is Judge Moore. You're kind of making two arguments, which is fine, but I want to tease them out for a second. Your two blended arguments are, one, there isn't a motivation to combine these two things, in part because of these statements in Lee. And I understand that argument. But I want to pull away from that argument just for a second because one of the things you argued to the examiner, you then argued as your very first point in your brief to the board, and you argued in your first point in your brief to us, was that at no point did the PTO address what you believe to be a teaching away in Column 2. Is that accurate? Have I understood your facts as argued? That's correct. You argued it to the examiner, and the examiner never made mention of it. In fact, said the only thing he was relying on Lee for was this other thing, right? He addressed it by saying it's preposterous to believe it, but he didn't really address it. What's preposterous? The idea that you wouldn't use preface. So the examiner, there's somewhere in the examiner's answer, I believe, it says the idea that you wouldn't preface it. Okay. I'm sorry. That's a preface about Lee. The examiner in his rejection didn't mention it, right? His final rejection was non-appeal to the board, right? Right. Correct. Then you make the argument again to the board. The argument is, by the way, the examiner never addressed in an APA violation sense, never addressed our teaching away argument. Exactly. Yes. There's no question he didn't address it in his final rejection. Now, all of a sudden, the examiner says in his responsive brief to the board, well, that's just preposterous. Okay. The board then likewise doesn't address it at any point in the opinion. Is that accurate? The board never addresses head-on at all this teaching away argument. Is that correct? Exactly. Correct. Then you make the argument to us on appeal. The very first point, it's your first argument in your brief, is we've made this and I'm not sure why, but the PTO still has never addressed it. Is that correct? Yes. Okay. The red brief comes in and rather than offer any explanation for why it was never addressed below, they instead tell us we should just decide it as a matter of first impression on appeal. Does that feel right to you? Yes. Wouldn't this be a question of fact, this whole teaching away and what a reference discloses? Yes. Do you think we, the federal the fact on appeal in the first instance? No. I don't think that's what you do. Okay. You're arguing motivation combined and you're trying to use this statement as part of your analysis, but my problem with being able to go with you all the way where you'd like to go to a reversal is that I have the PTO never on record as having actually decided this part of that question. That's where my hesitance lies in being willing to think about whether or not you're right about the motivation to make this combination. The PTO never addressed your teaching away argument. That's where I'm a little stuck because it's a question of fact. Well, they addressed it in a very lucid fashion. They didn't use substantial reasoning or evidence. They didn't explain. They just said, no, it's not credible. No, we think one of skill in the on appeal, right? Because I didn't see the board address it at all, even in a cursory fashion. So the board, let me... Isn't part of the confusion here that your position is not just that they didn't address your teaching away, but they didn't understand it. Yeah, they did address it. So, well... It's not as simplistic as the red brief would make it out to be, in other words. Right. Yeah. Well, yeah. To be able to withstand 40,000 PSI blowout pressure is incredibly challenging to do. It looks simple, but that's... I don't know what the forces of bullet being shot out of a gun, but I imagine 40,000 PSI is somewhat close. But if you look at appendix seven, that's page six of the board's decision, conceiving of and executing pre-assertion, French and Peter Brodsky's blood and sleep is quite more than ordinary to be able to play KSR and for the obvious, no method combination. So that's sort of the second half of the first full paragraph there. So they do attempt to do it, and then again on appendix five... Wait, wait. Time out. Time out. You're talking about page six of the board's opinion? Appendix seven. Yeah. That's... Okay. Yeah. And you're reading from the... We also agree that Lee provides the requisite motivation to modify Rothstein as proposed in the rejection. So I'm looking at page six, appendix seven. Right. But which sentence? Please tell me which sentence. Conceiving of... So if you look at one, two, three, four, five, six, seven lines down... Oh, yeah. Conceiving of and executing. Do you see that? Yeah. So that's sort of them saying, oh, well, someone would just understand it. It's obvious. It's sort of... Yes, but that sort of goes to whether a skilled artisan would be able to do that with Rothstein's argument, which I understood to be that Lee teaches away from it. I mean, you made a very specific argument pointing to a sentence in Lee, and I just don't see it cited or addressed. Right. So the way the examiner addresses it is he takes that... He takes Lee's teaching and he extracts it, right? So he takes Lee's teaching of... Yes, Lee does teach press fitting and pre-assembly, but Lee teaches that the only way you're able to accomplish that is by tapering the outer wall and tapering the fold. So the examiner takes that statement and extracts it to say, look, in general, press fitting is effective. So the examiner is conflating the teachings of Lee to extend beyond what Lee itself would agree with, just to say, just in general, he teaches pre-assembly when he says, no, cylindrical doesn't work and you need to taper it. So that's really what's going on. And then there's another... So, but the board then is basically just saying tapering is tapering is tapering. And since they all refer to tapering, that's the end of the inquiry. Right. Which, again, we've got the cylindrical metallic cleat. And when Lee is not a cylindrical metallic cleat, it's a tapered metallic cleat. We had arguments about the proper construction of cylindrical, which I don't think is that issue. It's effectively vertical or straight parallel walls. And so we have the examiner... I think what's going on is he's acknowledging that we made this argument, but he's trying to address it by saying, no, Lee teaches press fitting in general, right? He's looking at the argument. He thinks it's preposterous. And I just think in general, Lee teaches pre-assembly, which is an improper abstraction of the reference. So I think the examiner has really seen the argument and has considered it, but he does it in an abstract teaching in a way that Lee just doesn't agree with. And so I think you have... Getting back to the teaching way, we have a lot in our brief about this teaching against statement we've put in there. And when you look at your case law on teaching away, there's sort of a sliding scale of the teaching away. A little bit, too, is that no, it won't work. And we started to deplete case in our... Mr. Winter, you're using up your rebuttal time. If you want to keep going, you can, but if you'd like to... Yeah. No, I realize that. So I'll just say the deplete case basically says that when you have a situation where the proposed modification is disclosed to create a failure or make it not work, that is a situation where it clearly teaches away. I think we've got... We've talked about this teaching again. And the other problem with the board's reasoning is that they say, well, you just understand that the press fitting would happen the way we do because... And the problem with that is that Rothschild teaches in column nine, line 22, that the cylindrical threaded member is always engaged with the court before it gets assembled anyway. So we've got the reverse configuration and the board just says, oh, well, we understand. So I'll reserve the rest for rebuttal. Okay. Let's hear from Mr. Hickman, please. It suits the court. Lee teaches the way only if Lee would have deterred a person of ordinary skill in the art from pursuing the path that the claimant actually took. But Lee teaches that pre-assembly improves user convenience and that any problem with distortion of a pre-assembled plug can be addressed with tapering. But doesn't Lee expressly say that pre-assembly in the absence of Lee's own configuration actually doesn't work? That is correct, Your Honor. But the way I read Lee is that what Lee says is that, yes, there were problems and impracticalities with cylindrical plugs in the past. But when we look at the entire disclosure of Lee, we can see that what Lee did was that he adjusted the tapering of the walls of the plug and that solved the problem with the distortion of the plug. But to me, that's like saying, okay, if you do this upside down, it will never work. But you do it right side up, my invention can make it work. And you're saying that therefore he discloses the upside down? That's what doesn't make any sense to me. What I think Lee is disclosing, and again, as Rothstein also discloses, is that tapering is a very common elementary technique in this field. And that Lee used tapering to solve the same problem that people in the field had solved with the same technique. It is true, as Your Honor pointed out, that the direction in which the plug goes into the sleeve in Lee is the reverse of the way that it goes in Mr. Krilichen's invention. But what the court's finding was, was that tapering is such an elementary technique that a person of ordinary skill would understand how to use that no matter the direction. But doesn't Lee go so far as to actually say that if it's not done in the direction I'm doing it and with the way that I'm doing it, then it won't work? I do not read Lee as being that conclusive about the direction. Lee certainly chose to hammer the core in from the outside going inside into the sleeve. But I do not read Lee as disparaging taking the opposite direction. Mr. Hickman, one problem with your argument in this case to me is you started the very first sentence out of your mouth was, the way I read Lee. And now in your response to Judge O'Malley, you twice said, I read Lee as not disparaging. I read Lee as. The problem is how you read Lee is not relevant, is it? You're not the fact finder, are you? I do not. And I don't see the board as having said these things. So Mr. Hickman's read of Lee is awesome, but sort of not relevant to our decision in the case. What's relevant to our decision in the case is, did the board make fact findings about this argument? So what would you point me to in the board's decision that isn't how you read Lee, but what the board in particular said about this? If we go back to page seven of the appendix, which is page six of the board's decision, and when Mr. Wynter was arguing in the court, I'm through this. And I will readily acknowledge that the board did not use the term teaching away, but this is what we're talking about. And specifically in paragraph, the second full paragraph on appendix page seven, the board talks about tapering. And the board points out that in both Roski and Lee, tapering is used in that they're applying a well-known principle of a mechanical wedge to radially expand a sleeve by insertion of a wedge, shape, plug, or core. The board provides some citations to the art and then concludes the paragraph by saying, while the locations of the tapering may vary from one device to the other, to another, a person of ordinary skill in the art would understand that the mechanical principles apply to the same. When you look at the red brief and you look at the gray brief, it's like two ships passing in the night. In other words, the board says, refers to tapering generally, but never actually addresses all of the arguments that are spelled out probably in the best detail, but that were also presented before the board. The arguments that what they're talking about is that the way Lee is configured and the way Lee teaches that you don't do press fitting or pre-fitting and the principles of Roski that they're actually teaching away from the combination. And the board never really addresses that. Well, the board does. I believe the board does, in the opinion addressed the reversal of, and the reverse configuration of the plug and the sleeve. And I mean, it's clear in the record that Roski uses both approaches. So the board and the examiner really, I think, did not buy into the argument that simply reversing the direction or the relative placement of the plug and the sleeve made a difference. So I would contend that although this board opinion may not follow the sort of the precise sequence that a traditional teaching away opinion or obviousness opinion might flow, that it is clearly contending with Mr. Drelton's argument that although the law and the facts that are necessary to support the rejection under substantial evidence are there. Anything further, Mr. Hickman? I have nothing further. Okay. Mr. Winter, you have a little bit of rebuttal time. All right. You can hear me now? Yep. Okay. Great. So getting back to Appendix 726, the board says, the result of the modifications is predictable and expected. Right? That's what they're saying about Lee, this press fitting modification is predictable and expected. If you look at Lee, Lee says, well, only if you taper the outer wall of the insert. It's predictable and expects only if you do not have a cylindrical metallic sleeve. Rothstein has a cylindrical metallic sleeve. So basically what is going on is he's saying, it's predictable to press fit into Rothstein. And that would definitely work. And I'm just going to ignore the fact that Lee says, no, the radial distorting problem is going to make that be practical. So we have a very clear, what I call teaching against, on the stronger scale, the stronger scale of the teaching away sliding scale that is consistent with your case. And I think still at the same time, there's never any finding to support the conclusion that Rothstein would actually have the core press fit into the sleeve before that thread rod is already threaded as a whole. The thread rod is always threaded to the core. And then after that, put into the sleeve, which is inconsistent with our claims. Thank you. Thank both counsel for their argument. The case is taken under submission.